Hollie Lundahl
P.O. Box 344
Lusk, WY 82225
801-791-4805

## IN THE NIOBRARA COUNTY DISTRICT COURT
## IN AND FOR THE STATE OF WYOMING

Hollie Lundahl

      Plaintiff

      v.

VISHAL GARG in his personal
and official capacities, BETTER
MORTGAGE CORPORATION
and BOB BAKER

      Defendant

Civil No. CV-2019-0635

## VERIFIED
## COMPLAINT

FILED
IN DISTRICT COURT
NIOBRARA COUNTY, WYO

JAN 29 2019

BY: ~~Deradee Dewitt~~
                      deputy

COMES NOW Plaintiff Hollie Lundahl and alleges as follows:

### SUBJECT MATTER JURISDICTION ALLEGATIONS

1.  This Court has subject matter jurisdiction over the within claims under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691(a) et seq., the Fair Housing Act, 42 USC 3601, et seq; and For statutory breaches of Fannie Mae's Underwriting processes also culminating state law Lender Liability torts of: (1) Breach of contract; (2) Breach of the Covenant of Good Faith and Fair Dealing; (3) Constructive Fraud aka Fiduciary Fraud; (4) Economic Duress, (5) Tortious Interference with a purchase contract, (6) Injunction relief to close, and (7) Wyoming's Consumer Protection Act. [1]

### PERSONAL JURISDICTION

2.  Personal Jurisdiction exists over all the defendants, as one defendant resides in

---

1.  All references to exhibits in this complaint shall be filed under separate cover as an appendix and be under seal of the court as containing confidential information not open for public viewing and for the court's eyes only. The Notation shall read APP. ex. "1".

Sweetwater and Laramie Counties Wyoming and because the transitory contract subject of this action was formed in this state and this county.

## GENERAL ALLEGATIONS

3.    Plaintiff found a home to purchase in September of 2018.   Plaintiff's household is a disabled veteran's household surviving off of disabilty income both personally and from a special needs trust, the latter formulated under the guidelines of the Social Security Administration.    The other applicant, a disabled veteran, currently resides in section 8 housing.

4.    To acquire sufficient funds to purchase a home, Plaintiff and the other applicant applied to a non-profit organization that financially assisted disabled veterans to acquire a home through a downpayment assistance grant. The name of that non-profit organization is the PenFed foundation. See APP. ex. "1". Plaintiff's household also applied for a Homestart Plus grant through the Federal Home Loan Bank in Des Moines through a member bank agreeing to sponsor Plaintiff for this grant. See APP Ex. "2". The latter grant was geared to low income and disabled households that resided in section 8 housing. Plaintiff successfully obtained final approval for both grants resulting in a combined $15,000 down payment assistance grant.

5.    In October of 2018, Plaintiff's were approved by the USDA to borrow up to $126,500 of Direct Home Loan Funds to acquire a home. Both grants were properly accepted by the USDA and Plaintiff secured additional gift funds from relatives in the amount of $50,000 to fund additional down payment on the home. The USDA put the gift letters through the appropriate examination procedures. Once the funds were approved by the USDA, all funds were placed into an escrow account with Pennington Title (a preferred title provider of the USDA ) - except the PenFed Grant which required the lender to send a mutually approved final disclosure statement to PenFed along with wiring instructions – just before the closing date. See Pennington Title's disclosure statement to Plaintiff as the buyer at APP Ex. "3". The Title Company provided receipts for all gift funds approved by the USDA and placed into escrow, see APP. ex. "4". The title Company also provided a receipt for the advance by a third person for the Homestart Plus grant which was required to be reimbursed to that person AFTER the closing on the transaction by distributing the closing docs to the FHLB member-Dacotah Bank who would then orchestrate the reimbursement. See APP ex.

2

"5" for this receipt filling the deposited downpayment proceeds up to $60,000.

6.    To meet the Penfed grant, Plaintiff and the other disabled veteran applicant were also required to place a minimum of $2500 of their own funds into escrow. Plaintiff placed $3500 of their own funds into escrow. See APP. ex. "6". Now the escrow had been completely funded to the present amount shown in APP ex. "3".

7.    The USDA required plaintiff to pay for and pass a separate inspection on the property. The roof had hail damage and therefore Plaintiff was required to replace the roof before the inspection. Plaintiff did so. See new roof Plaintiff placed on the home at APP. ex. "7". The inspection passed flying colors thereafter. See receipt for payment of inspection at APP ex. "8".

8.    The USDA also required that Plaintiff pay for an entire year of homeowners insurance on the property. Plaintiff paid this fee in November of 2018. See APP ex. "9".

9.    On November 30, 2018, the USDA sent out a funding commitment notice on the property. See APP ex. "10".

10.   The Government shutdown then occurred preventing any further disposition of the sale.

11.   The Seller gave Plaintiff an ultimatum that he was going to withdraw from the sale if Plaintiff did not obtain another lender by the end of January 31, 2019; irrespective that Plaintiff had imputed thousands of dollars in repairs on the property.

12.   Defendant Better Mortgage Corporation hereinafter known as "BETTER" is an upcoming digital mortgage company that packages, underwrites and funds mortgages online and then subsequently sells their mortgages to Fannie Mae. Defendant Vishal Garg is the founder and CEO of BETTER. Better promises not to charge excessive prices nor any origination points in their digital mortgage processing program.    Further BETTER is consistently reported as one of the lowest rates offered under Bankrate's daily postings.

13.   On January 14-17, 2019, Plaintiff observed BETTER's postings of their 10/1 arm and 30 year fixed over BANKRATE's website. See APP ex. "11". Plaintiff immediately applied for both programs but ultimately locked in the mortgage rate of the 3.875% 10/1 arm. As shown in ex. "11",   the points on the 3.875% arm was set at $2,152 based on a $240,000 loan. When calculating the points as compared to the loan value, BETTER was charging . 0089 of the loan amount to determine the points it would charge for the 3.875% rate.

14.   Plaintiff was only borrowing $112,000. Multiplying this loan amount by the

3

factor of .0089 **results in a points fee of $1004.26.** When BETTER locked in Plaintiff's rate, they did so at a points fee 2¼ higher than they advertised. See APP ex. "12".

15. After Plaintiff repeatedly complained about the unauthorized increase in the points fee when locking the rate, instead of correcting the points fee OR allowing Plaintiff to buy the rate down to 3.19% which would glean BETTER the points they were asking, BETTER then began to abuse the underwriting process within the meaning of 12 CFR 1002.9(c) by indicating that BETTER was "refusing to accept Plaintiff's grants submitted for down payment" and by implementing improper "Incomplete Application remarks" under the underwriting responses.

16. As to the first abuse, BETTER refused to grant Plaintiff's down payment grants to prevent Plaintiff from completing the loan process. See APP. ex. "13" for BETTER's underwriting response denying that BETTER could accept Plaintiff's Homestart Plus Grant which is a grant funded by the Federal Home Loan Bank. See APP. ex. "14" for fhlb-des moines iowa's affordable housing program listing the Homestart Plus grant as one of their grants. BETTER also denied that they could accept the Penfed grant. Again, Plaintiff objected because the Penfed grant was from a non-profit foundation supporting the military.

17. In response to these underwriting claims, Plaintiff presented BETTER with Fannie Mae's regulations which required BETTER to accept grants from both the Federal Home Loan Bank and non-profits. See APP ex. "15". Plaintiff also argued that the grants were already in play and/or funded with commitment letters; thereby leaving very little to BETTER finalize the grant processes. See final Penfed commitment letter at APP. ex. "16". See reservation letter on Homestart Plus grant at APP ex. "17". Plaintiff's objection to the refusal to accept her grants would result in a later argument with "steve s" at Better's underwriting team and HOLLI's numerous email complaints to Vishal Garg complaining about the underwriting abuse which violated Fannie Mae's policies on accepting grants.

18. BETTER's underwriting team then commenced asking Plaintiff about the source of large deposits made into Plaintiff's bank account by relatives during black friday sales. Plaintiff explained that the deposits came from family members to acquire large appliances to fill the home that Plaintiff should have been in last November if not for the Government shutdown. Plaintiff provided copies of all the purchase receipts. Irrespective that Plaintiff established the large deposits had nothing to do with borrowed downpayment proceeds, BETTER's underwriting team continued to harass plaintiff with the same large

4

deposit questions.  Fannie Mae's policy is that the large deposits may be inquired into only if they are borrowed funds used for the purchase.  See APP ex. "18".  These inqueries were clear harassment given the fact that Plaintiff's escrow account had already been completely funded on Plaintiff's end so the large deposits into Plaintiff's bank account AFTER THE FACT, could not have been borrowed funds for the purchase.

19.  BETTER's underwriting team then took to asking about the source of deposits funding Plaintiff's special needs trust.  Plaintiff gave BETTER a 19 month history of recorded deposits as opposed to a two month history;  Plaintiff gave BETTER a notarized letter from the donor indicating that the payments would continue for the life estates of the beneficiaries; Plaintiff as trustee also gave assurances that the deposits had occurred since 2014 and would continue for the life estates of the beneficiaries,  and  Plaintiff tendered a copy of the trust document.  Under Fannie Mae's verification rules for trusts,  Plaintiff was only committed to giving the underwriting team a copy of the trust document  OR  a statement confirming that the trust income would continue past three years from the application date. See APP ex. "19".

20.  BETTER's underwriting team than began too demand that  Plaintiff require the donor(s) of the deposits into the special needs trust to  provide their  bank statements proving that they were the sources of the deposit,  in violation of the donor's rights to financial privacy,  and irrespective that there had been a five year history for these deposits given to BETTER.  See APP ex. "20".  Plaintiff objected to this request as illegal. Consequently, on January 22, 2019 a "steve s" from BETTER's underwriting team called Plaintiff on the phone and announced that BETTER would not be processing a loan for Plaintiff because third persons refused to produce their bank records.  Plaintiff threatened to sue BETTER for violating Fannie Mae's regulations with respect to processing loans, for ECOA violations for not accepting public assistance grants as part of Plaintiff's purchase proceeds,  for denying a disabled household of the right to purchase a home based on disability grants or income when BETTER could not identify any financial impairment to their mortgage process by processing Plaintiff's grants in violation of the FHA,  and for a myriad state law causes of action.

21.  BETTER has not responded to Plaintiff's threats of suit  if BETTER does not cease and desist their refusal to grant Plaintiff a loan.  Further BETTER has never changed points fee on Plaintiff's locked 3.875% 10/1 arm to its correct value of $1004 (unless Plaintiff is permitted to buy the points down.).  Finally,  Plaintiff's loan is required to be closed on or

before February 7, 2019 by agreement.   It is alleged that BETTER intends on delaying that close date so that BETTER can expire the rate lock, so that BETTER can expire Plaintiff's homestart plus grant of $10,000  and finally so that BETTER can illegally terminate the loan process.

      22.   It is undisputed that Plaintiff's escrow  has been completely funded since November 15, 2018  waiting for a lender to deposit $112,000 into that escrow.  BETTER received an appraisal from it's lender valuing the property at $188,000. With BETTER's loan contribution of $112,000,  the loan to value on the property will be 60%.  Hence Plaintiff is coming in with 40% equity and there is little to no chance that Plaintiff will ever default on the mortgage.  Moreover,  Plaintiff has already expended $8,000 on the placement of a new roof and therefore has a substantial investment into the property already.

      23.   Finally, Time is of the essence and accordingly Plaintiff  seeks an injunction under the FHA and the ECOA compelling the Defendants to  (1)  process Plaintiff's grants, (2) either discount the fees to the proper $1004 or allow plaintiffs to buy down the interest rate to 3.125% which would allow BETTER to receive $3012 in point fees (the latter is to Plaintiff's preference);  (3)  immediately deposit the fund amount  $112,000,  (4)  waive escrowing Plaintiff's property tax and insurance fees due to the amount of equity, and (5) close this transaction on or before February 7, 2019 as commited by contract.

      24.   Plaintiff also seeks an injunction against defendant Baker to deliver to Plaintiff her furnishings over which  BAKER has been paid delivery fees. . At the agreed upon amounts.

### FIRST CAUSE OF ACTION
### (Injunction Under the ECOA, FHA  and Fannie Mae Regulations - Ordering The Defendants to Comply And Close The Transaction Within the Mandated Terms)

      25.   Title  42 USC 3613(c) provides that an injunction  order may be obtained ordering  affirmative action by the defendant to compel their actions to come into compliance with the law.   15 U.S.C. §§ 1691-1691(f) provides for injunctive relief under the ECOA.  The regulations published by Fannie Mae are subject to enforcement pursuant to Fannie Mae regulation no. A3-2-01 requiring BETTER and GARG to comply with of it's and other laws. See APP. ex. "21".

      26.   This Court is authorized to issue a permanent injunction against defendant's violations of the ECOA,  the FHA and Fannie Mae regulations to prevent further violations.

27. A creditor is prohibited from denying credit because an Applicant's income derives from any public assistance program" 15 U.S.C. § 1691(a)(2). Grants from PendFed Foundation and the Federal Home Loan Bank to assist disabled low income persons to get into a home. . .are funds from a public assistance program. The BETTER defendants are therefore barred from denying Plaintiff credit based on their refusal to process these grants. . . cand further, can be ordered to process these grants to come into compliance with the laws as required by APP. ex. "21".

28. The FHA under 42 U.S.C. § 3604(f)(2) prohibits the BETTER defendants from discriminating against Plaintiff as a protected disabled person. . in the provision of services attaching to a sale as based on any aspect of Plaintiff's disability. The Grants are services provided to Plaintiff as a disabied household to help obtain a home. In 2017, in re USA v. 505 Central Avenue Corp, case no. 7:17-cv-00351-NSR, Doc. 16 (S.D.N.Y., 2017) found at APP. ex. "22", a US Court affirmed that the failure of a Defendant to allow a disabled person and/or his trust to purchase a home based on any factor related to his disability constituted a violation of the FHA and subjected 505 Central Avenue to injunctive and monetary penalties; the latter to the tune of $120,000. The BETTER defendants have refused to provide lending services to Plaintiff in the sale of a home based on public assistance services directly related to Plaintiff's status as a qualified disabled veteran household . . . and thereby discriminate against Plaintiff's right to obtain a home. Moreover the BETTER defendants have faile to articulate any financial impediment to themselves that would justify this discrimination.

29, In addition, all of the rules under Fannie Mae require that the BETTER defendants comply with their regulations in the processing of loans including honoring grants and advertised discount fees and rates.

30. Based on all of the foregoing, Plaintiff seeks an injunction ordering the Defendants to:

(1) Process Plaintiff's grants,
(2) Discount the point fees to the proper amount of $1004 at the interest rate of 3.875% on a 10/1 arm through the advertised point multiplication factor of .0089;
(3) Allow plaintiffs to buy down the interest rate by three points to 3.125% which would allow BETTER to receive $3012 in point fees at closing
(4) immediately deposit the loan fund amount of $112,000 into the Pennington Title Account to sloe the loanl
(5) sign the verification of income statement Plaintiff prepared for BETTER and than fax that statement to the PenFed foundation;

7

as the lender's credit fees,

(6)   Prepare a disclosure statement under the foregoing terms that meets with Plaintiff's approval and then submit that statement to the Penfed foundation along with wiring instructions as directed in APP ex. "16"

(7)   waive escrowing Plaintiff's property tax and insurance fees due to the amount of equity Plaintiff has in the transaction;

(8)   Send the closing documents to the member bank, dacotah bank for the FHLB Des Moines Iowa for completion of processing the homestart grant, and

(9)   close this transaction now since the appraisal has come back, and there is no reason for further delay;  In any event the transaction must be closed before February 7, 2019 as promised and under the foregoing terms.

31.   The foregoing injunctiion relief will take place immediately as time is of the essence to preclude further damages to Plaintiff, and without the subsequent disposition of the inclusive torts herein.

## SECOND CAUSE OF ACTION
### (Violation of the ECOA against the BETTER Defendants)

32.   To state a claim for relief under the ECOA, the  complaint must plausibly allege that (1) each plaintiff was an "applicant"; (2) the defendant was a "creditor"; and (3) the defendant discriminated against the plaintiff with respect to any aspect of a credit transaction on the basis of the plaintiff's membership in a protected class. See 15 U.S.C. §§ 1691(a), 1691a(b), 1691a(e), 1691e(a).  The ECOA provides that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . because all or part of the applicant's income derives from any public assistance program." 15 U.S.C. § 1691(a)(2).  Regulation B of the ECOA provides that "[a] creditor shall not make any oral or written statement, in advertising or otherwise, to applicants or prospective applicants that would discourage on a prohibited basis a reasonable person from making or pursuing an application." 12 C.F.R. § 202.4(b).

33.   In this action,  Plaintiff was an applicant for credit on a home loan under the ECOA.  The BETTER defendants  are  and were creditors within the meaning  of the ECOA. The BETTER defendants discriminated against Plaintiff with respect to utilizing   public assistance grants for the purchase of the home in question and in fact,  orally publicated that they would not accept these types of grants for the purchase.     Refer back to APP ex. "13". The moment the defendants orally announced that they would not accept the homestart plus grant as income for the purchase of Plaintiff's home, the BETTER defendants violated the

8

ECOA justifying punitve damages in Plaintiff's favor in the amount of $10,000.

34.   Plaintiff will determine actual damages under this COA after the transaction is closed pursuant to the foregoing injunction terms.

**THIRD CAUSE OF ACTION**
**(Violation of the the Fair Housing Act, 42 USC 3601, et seq; By The Better Defendants)**

35.   The FHA under 42 U.S.C. § 3604(f)(2)  prohibits the BETTER defendants from discriminating against Plaintiff as a protected disabled person. . in the provision of services attaching to  a sale as based on any aspect of Plaintiff's disability. The Grants are services  provided to Plaintiff as a disabled household to help obtain a home. In 2017, in re USA v. 505 Central Avenue Corp, case no. 7:17-cv-00351-NSR, Doc. 16 (S.D.N.Y., 2017) found at APP. ex. "22",  a US Court affirmed that the failure of a Defendant to allow a disabled person and/or his trust to purchase a home based on any factor related to his disability constituted a violation of the FHA and subjected 505 Central Avenue to injunctive and monetary penalties; the latter to the tune of $120,000.

36.   The Better  defendants have discriminated against Plaintiff with respect to lending services related to the sale of a home to Plaintiff by rejecting public assistance funds made available to Plaintiff on the basis of her disability status in violation of  42 U.S.C. § 3604(f)(2) and the spirit of APP  ex. "22".  Plaintiff seeks money damages in the amount of $120,000 for the foregoing violation, if the closing takes place before or by the deadline date by processing these grants. If BETTER fails to process the grants timely and causes Plaintiff to lose the credit financing,  then Plaintiff will seek upwards of $3 million in damages for this statutory violation.

37.   The  BETTER  defendants  have created a hostile housing practice through their extortive lending practices in violation of 42 USC section 3617.  When Plaintiff noticed BETTER that their lending practices in refusing to accept grants and in demanding third party financial information from non-borrowers as a predicate to obtaining the loan. . .were illegal, BETTER informed Plaintiff that they would terminate the loan.  The FHA prohibits any type of intimidation for asserting housing rights.   Plaintiff seeks all damages accorded by law for a violation of  42 USC section 3617  and supporting codes of federal regulation.

**FOURTH CAUSE OF ACTION**
**(Breach of Contract and of the Covenant of Good Faith And Fair Dealing)**

38.   Plaintiff came to BETTER because of the positive advertisements about this lending institution. Plaintiff locked in a rate for a 10/1 arm based on BETTER's advertisement through Bankrate that they offered this rate based on a point factor of .0089 on a \$240,000 loan. When BETTER locked in plaintiff's rate, BETTER calculated the points fees 2½ times higher than advertised rate, in bad faith. When Plaintiff complained, BETTER subsequently denied that they accepted Plaintiff's public assistance grants and further implied that they would terminate Plaintiff's loan if Plaintiff did not accept the fees posted by BETTER. BETTER than began abusing the underwriting process by asking for financial documents by persons not borrowers on Plaintiff's loan in order to set up a scenario justifying their termination of the lending process.

39.   BETTER has breached the rate locked contract from the outset and violated the covenant of good faith and fair dealing in the lending process order to procure a false termination of a loan to Plaintiff.   Plaintiff seeks all damages accorded thereby.

## FIFTH CAUSE OF ACTION
### (Constructive Fraud against the BETTER Defendants)

40.   Johnson v. Reiger, **No. 03-123 (WY, 2004) (Constructive fraud has been defined as consisting of all acts, omissions, and concealments involving breaches of a legal or equitable duty resulting in damage to another,** and exists where such conduct, although not actually fraudulent, ought to be so treated when it has the same consequence and legal effects. In re Estate of Borton, 393 P.2d 808, 812 (Wyo.1964)).

41.   It has been concluded as a matter of law that where a lender is acting an effective broker for a buyer of the loan, that a fiduciary relationship exists and that duties are owed to the borrower in that relationship. See High v. McLean Financial Corp., 659 F.Supp. 1561 (D.D.C. 1987) ( The court held that **if the bank acted as a broker between the borrower and the second lender, then the bank owed the borrower a duty of good faith and fair dealing and acted in a fiduciary capacity.)**

42.   By concealing the true calculation of Plaintiff's point fees to frustrate a loan from being issued to Plaintiff, by making illegal demands upon plaintiff that violate third parties rights, and by abusing the underwriting process in order to terminate Plaintiff's lending rights, the defendants have engaged in multiple acts of constructive fraud entitling Plaintiff to all remedies therefore.

## SIXTH CAUSE OF ACTION
### (Economic Duress against All Defendants)

43.    When the conduct of the threatening party is usually tainted with some fraud or wrongdoing, an economic duress claim may be stated. Continental Ill. Nat'l Bank & Trust Co. v. Stanley, 606 F. Supp. 558 (N.D. Ill. 1985). See also Feedlander, Inc. v. NCNB, 706 F. Supp. 1211 (E.D. Va. 1988); First Tex. Sav. Ass'n v. Dicker Center, Inc., 631 S.W.2d 179 (Tex. Ct. App. 1982).

44.    Under the Lender Liability context,  [1] [T]here is a threat to do an act the threatening party has no legal right to do [2] [The threat] must ... destroy the free agency of the party against whom it is directed .... [3] The restraint caused by such threat must be imminent [4] It must be such that the person to whom it is directed has no present means of protection.'" Nat'l Bank v. Farah Mfg. Co., 678 S.W.2d 661, 683 (Tex. Ct. App. 1984).

45.    In this action, BETTER has threatened not to close the sale by disallowing Plaintiff's Penfed and FHLB grants as part of plaintiffs assets for purchase of the property in question. This is clearly wrongful conduct as the rules of Fannie Mae require BETTER to accept these grants. BETTER's threat destroys Plaintiff's free agency to use these grants which are needed to complete the purchase of the property in question. The restraint caused by the threat is imminent, because BETTER has represented that they will not close the transaction or lend Plaintiff money unless Plaintiff comes up with $15,000 in additional monies from sources other than these grants. This will cause Plaintiff to lose the sale because Plaintiff has no present means to obtain $15,000 elsewhere.    Plaintiff therefore seeks all damages accorded by law for a breach of this cause of action.

## SEVENTH CAUSE OF ACTION
### (Tortious Interference with a purchase contract by the BETTER Defendants )

46.    A claim for tortious interference with contractual rights arises when a plaintiff has a valid contract with a third party, the lender knows about the contract and either intentionally induces the party to breach the contract with the plaintiff **or prevents the plaintiff from performing the contract,** resulting in damages to the plaintiff.

47.    A purchase contract has been in place since September 5, 2018. BETTER is making illegal demands upon Plaintiff and denying Plaintiff grants to complete out her purchase contract with the seller, and which terms have already been fixed in an escrow account since November 15, 2018. BETTER has tortiously interfered with Plaintiff's ability to

11

carry out her purchase contract with the Seller by denying the grants thereby justifying all remedies accorded by law herein.

## EIGHTH CAUSE OF ACTION
### (Violation of Wyomings Consumer Protection Act Against the Better Defendants)

48.   The WY Consumer Protection Act proscribes the following conduct.

40-12- 105. Unlawful practices.

(a)   A person engages in a deceptive trade practice unlawful under this act when, in the course of his business and in connection with a consumer transaction, he knowingly:

(x)   Advertises merchandise with intent not to sell it as advertised;

(xv)  Engages in unfair or deceptive acts or practices;

49.   BETTER advertised an interest rate fee for a 10/1 arm that attached $2152 in points based on a loan amount of $240,000. APP. ex. "11".   Calculating the factor for the points fees results in .0089.   Plaintiff intended to lock both this rate and this point fee schedule based on the size of her loan for $112,000, into place.   BETTER 2½ times the fees due from Plaintiff in direct contravention to their advertisement with bankrate.   BETTER's actions were unfair and deceptive within the meaning of the act, entitling Plaintiff to all damages accorded thereby.

WHEREFORE, PLAINTIFF PRAYS FOR THE FOLLOWING:

(1) Declaratory and injunctive relief under the FHA, ECOA and regualtions set forth by Fannie Mae;

(2) Compensatory, general and punitive damages for Plaintiffs federal and state law causes of action as allowed by law;

(3)   Actual and punitive damages on certain causes of action as allowed by law;

(4)   Equitable relief as allowed by law;

(5)   Trial by Jury

(6)   Attorneys fees and court costs as allowed by law;

(7)   Pre and post judgment interest

(8)   An Immediate issuance of a preliminary injunction to come into compliance with the laws and prevent imminent harm.

Date: January 28, 2019

Holli Lundahl